By the Court. Mason, J.
The bill in this cause was filed in the late court of chancery to foreclose two mortgages, executed by the Merchants’ Exchange Company to the plaintiff, as security for the payment of bonds of the company amounting in the whole to $700,000, issued for monies borrowed by them and expended in the erection of the exchange. The company and also several other of the defendants, appeared and answered the bill, and the cause, having been duly transferred to this court, was regularly brought to a hearing at the last June term. The counsel for the company did not attend, when the cause came on to be heard, and the decree was taken against them by default, but the counsel afterwards appeared on the set *694 tlement of the decree, before one of the judges, and proposed various amendments, to it, some of which were adopted by the judge.
A reference was ordered to Wm. Mitchell,- Esq., to compute the amount due, and he was directed to give notice by advertisement to all the bondholders to come in and prove their respective demands. Other special directions were, also given, both as to the mode of conducting the reference and as to the subjects on which he was to report. The solicitors and counsel of the .company attended before the referee, under this order, and were heard in relation to the subject matter referred. The referee has made his report, and the cause is now on the calendar of the present term for hearing, on exceptions taken by some of the defendants. No exceptions were taken by the company to the report, nor was any complaint made, when the counsel appeared on the settlement of the decree, that the company had not been heard, nor has any application on the subject been made until the present time. A petition is now presented by the trustees of the company, praying that the cause may be reheard upon the merits, at the same time that the exceptions to the report are argued.
The grounds on which the rehearing is asked for are, in sub-, stance, that the petitioners are advised that the .decree is erroneous in declaring the bonds and mortgages to be valid.—-that the mortgages are not either of them a valid or legal security for the benefit of the bondholders, and that the bonds are not valid obligations against the company. They also say that Mr. Bid-well, who acted as counsel for the company, was accidentally absent from the court when the cause was called, and that he intended to be present and protect the rights and interests of the company.
The petition farther says that the trustees lately chosen by the stockholders have, since their election, employed Augustus Schell, Esq., and that from his investigations it appears that a majority of the former trustees were holders of some of these bonds, and that it was for their interest to have the bonds declared ■ valid, and therefore they took no measures to present to the court obr jections to their validity : that the stockholders, finding their interests neglected by those trustees, at an election held on the *695 11th of January last, elected other trustees in their stead. That they, the stockholders, ought not to suffer by reason of the accidental omission of their counsel or the neglect of their trustees to attend to their interests, and that they have a good and substantial defence on the merits, as they are advised by their counsel and believe.
The petition also sets forth, that the time for excepting to the report has expired, and that the rights and interest of the petitioners require that exceptions be filed, and they pray that they may have liberty to file them, and that the cause be reheard.
To this petition is annexed a certificate by three distinguished counsel of this court, that they have examined the case referred to in the petition, and are of opinion that the decretal order therein mentioned is erroneous in the particulars specified in the petition.
It appears from the affidavits and other papers read in answer to the petition that, some time in the month of June 1843, one Richard Barry, a judgment creditor of the company, filed a bill against them in the then court of chancery, to obtain payment of his debt, in which bill he insisted that the mortgages and bonds in question in the suit were void, and prayed that they might be so declared. To that bill the company put in an answer, insisting on the validity of the bonds and mortgages, averring that they had been executed and delivered in good faith and for valuable and adequate consideration, to parties who had lent and advanced to the company the several sums of money secured by them respectively; and they, the company, were justly indebted to the holders of the bonds in the sums stated in their condition, and that the moneys loaned to them on the security of the bonds and mortgages had been expended by them in the completion of the Merchants’ Exchange building, which could not have been completed without the aid of such loans.
The suit of Barry was argued with great ability, on the part of the plaintiff, by two of the distinguished counsel who have given the certificate annexed to the petition in this case, and a profound and luminous opinion was delivered by Vice Chancellor Sandford, who, after a laborious investigation of all the objections urged against the validity of the bonds and mortgages, *696 held them to be without foundation and the bonds to be entirely valid, and dismissed the bill with costs. That decision was not appealed from, and is to be deemed the law on the subjected.(a)
On the argument of the petition, the counsel of the company, by direction of the court, submitted the points on which they intended to rely for the purpose of defeating a recovery on the bonds and mortgages, in case the court should grant them a rehearing. The court required to be informed on these points, in order that they might see whether any substantial rights of the stockholders had been sacrificed by the course the cause had taken.
There is not one of these points, however, which affects the equity of the plaintiff’s claim. They do not allege any thing at variance with the facts stated in the answer of the company to Barry’s bill, just referred to. They do not pretend that any fraud was practised on the stockholders, but merely state technical objections to the form of the securities and to the power of the company to raise money upon them, most of which objections had been taken and overruled in the case of Barry.
There is an important difference, however, between that case and the present. In the case of Barry, a judgment creditor of the company attacked the securities, in order that by destroying them, he might himself obtain the payment of his just demand which was otherwise hopeless. In the present case, the parties themselves, who created the securities, who applied for and obtained the money on the faith of them, who expended it upon the building they have erected, and who have been in the enjoyment of its benefits in common with the whole community, are seeking upon mere technicality, to deprive their creditors of the benefit of these very securities on which alone the money was advanced.
Had the questions now sought to be raised been properly presented to the court when the cause was regularly called on for hearing, the court would have given to them a patient and thorough investigation; and if we had been satisfied that the objection to the bonds and mortgages, however technical and *697 unconscientious, were yet legally valid, we should not have hesitated to declare the bonds to be void, and to free the property from the lien of the mortgages, although we might as individuals have been pained at being used as instruments in inflicting an indelible stain upon the mercantile character of the city.
We are, however, spared the disagreeable necessity of considering the question. The time for making objections of this kind in this cause has gone by.
The plaintiff has obtained his decree regularly, according to the course and practice of the court. The defendants suffered a default, and they have moreover slept upon it for nearly eight months. They come before the court asking as a favor, that which they acknowledge they cannot claim as a right. But it is a well established rule that the court will never open a default, or relieve a party from the consequences of his own neglect, in order to enable him to set up an unconscientious or a dishonest defence. The books are full of decisions to this effect. (Gay v. Gay, 10 Paige, 374; Bard v. Fort, 3 Barb. Ch. Rep. 633 ; Beach v. The Fulton Bank, 3 Wen. 561.)
According then to the established practice of the court this application ought to be denied. The object is to enable the defendants to set up a defence contrary to the right and justice of the case, and the granting it would facilitate the prosecution of a scheme, which, if successful, would, upon merely technical grounds, defraud the creditors of the payment of their just demands.
It is said, however, by way of excuse for not having made this application sooner, and indeed as a reason why the defence was not interposed at the hearing, that the former trustees were themselves bond-holders, and therefore personally interested in having the bonds declared valid; that they sacrificed the interest of the stockholders to their private interests, and that in truth the stockholders have not had an opportunity to make their defence until the present time. Admitting this to be so, it does not render the defence less dishonest, or a whit more entitled to the favor of the court.
But the opposing affidavits show that regular elections of *698 trustees have been heid every year since 1836 ; that the plaintiff was put in possesion of the mortgaged premises as mortgagee in the month of October, 1843, and has ever since that time retained possession in that character ; that the case of Barry, in which the trustees upheld the validity of the securities, was decided in 1844, and that this suit was commenced in March, 1848, so that if the stockholders disapproved of the conduct of the trustees, and really wished or intended to contest the validity of the bonds, they had had ample opportunities before the last election, of putting in trustees who would have taken the ground now sought to be taken in this case. If, therefore, they have lost the opportunity of making these technical objections, it has been entirely owing to their own negligence, and they are not entitled on this ground to favor from the court.
But we apprehend that the former trustees were actuated in this matter by highér motives than those which have been attributed to them, motives which unfortunately those who at present control the company’s affairs, do not seem to appreciate.
They knew that the debts were justly due—that the money secured by the bonds and mortgages had been lent upon the application and solicitation of the company themselves; that the particular form of the securities had been offered and devised by themselves ; that but for the monies obtained upon their credit, the noble structure which is the pride and ornament of our city, would never have been erected; and that for them to attempt upon such grounds as were contended for by Barry, and are attempted to be set up here, to repudiate these debts, would shock the moral sense of every honest man.
We think that in the course they pursued, they manifested no more than a proper regard for their own character, and that of their constituents. And it is with feelings of no ordinary satisfaction that we find ourselves, not merely authorized but absolutely required by the established rules of the court to refuse to these petitioners the opportunity of presenting questions, the discussion of which in our judgment injuriously affects the character of the company, and through them of the whole mercantile community.
The petition for rehearing and also for leave to file exceptions *699 o the referee’s report is denied; the plaintiff’s costs of resisting he petition to be taxed and allowed as costs in the cause*

 Barry v. Merchants’ Exchange Company and J. G. King, 1 Sand. Ch. R. 280.